IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LAMONT LOMAX**, : | |
|     Plaintiff, : | |
| : | 20-cv-1774-JMY |
| vs. : | |
| : | |
| **VIVINT SOLAR DEVELOPER, LLC**, : | |
|     Defendant | |

<u>**MEMORANDUM**</u>

**YOUNGE, J.**                                                                                       **NOVEMBER 18, 2020**

Currently before this Court is Defendant's dual Motion to Dismiss and Compel Arbitration pursuant to the Federal Arbitration Act ("FAA") (ECF No. 4). For the reasons discussed below, this Court will deny Defendant's motion without oral argument. Fed. R. Civ. P. 78, L.R. 7.1(f).

**I.      <u>Background</u>:**

    **A.      <u>Procedure</u>:**

Plaintiff filed a Complaint in the above-captioned matter on January 24, 2020 in the Philadelphia Court of Common Pleas. (Notice of Removal, Ex. A, Compl. (C.P. No. 2936, C.P. Phila. Jan 24, 20), ECF No. 1-4.) In the Complaint, the Plaintiff alleges that Defendant failed to hire him for a sales consultant position, in violation of the Criminal History Record Information Act, 18 Pa. C.S. § 9101 *et seq.* (CHRA), and the Philadelphia Fair Criminal Records Screening Standards Ordinance, § 9-3500 (the Philadelphia Fair Hiring Law). Defendant filed a Notice of Removal here in the Eastern District of Pennsylvania on April 3, 2020 that was assigned to this Court. (Notice of Removal, ECF No. 1.) Defendant then filed the Motion to Dismiss and Compel Arbitration that is currently at issue.

**B.     Facts:**

This litigation arises from a conditional offer of employment that Defendant extended to Plaintiff and then rescinded. (Compl. ¶¶ 29-46, ECF No. 1-4.) On January 23, 2018, in contemplation of Plaintiff becoming a sales consultant for Defendant, the parties entered into a Direct Seller Agreement that explains the terms and conditions for a potential at-will employment relationship between the parties. (Mot. Dismiss and Compel Arb., Ex. A, Direct Seller Agreement ¶ 5., ECF No. 4-1.) The Direct Seller Agreement contains an arbitration clause. (*Id.* ¶ 20.)

The Plaintiff signed the Direct Seller Agreement (Direct Seller Agreement) and began job training for the position as a sales consultant. (Compl. ¶¶ 12-13.) After conducting a background check and finding what it believed was a negative mark, Defendant rescinded the conditional offer of at-will employment memorialized in the Direct Sellers Agreement. (Compl. ¶ 14.) Plaintiff avers that he received no financial compensation from the Defendants.[1] (Declaration of Lamont Lomax ¶ 1, Resp. in Opp., Ex. A, ECF No. 7-3.)

In the Direct Seller Agreement, the Plaintiff agreed to arbitrate employment disputes arising from the agreement by using Judicial Arbitration & Mediation Services, Inc. (JAMS). (Direct Seller Agreement ¶ 20(b).)

The Arbitration Clause reads as follows:

> In consideration of my employment with the Company, its promise to arbitrate all employment-related disputes and my receipt of the compensation, pay raises and other benefits paid to me by the company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the company and any employee, officer, director, shareholder or benefit plan of the company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment with the company or the termination of my employment with the company, including any breach of this agreement, shall be subject to binding arbitration under the arbitration provisions set forth in the Utah uniform arbitration act (the "Rules") and pursuant to Utah Law.  The Federal arbitration act shall

>continue to apply with full force and effect notwithstanding the application of procedural rules set forth in the act.  Disputes that I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under local, state, or federal law, including, but not limited to, claims under Title VII of the civil rights act of 1964, the civil rights act of 1991, the Americans with disabilities act of 1990, the age discrimination in employment act of 1967, the older workers benefit protection act, the worker adjustment and retraining notification act, the fair credit reporting act, the employee retirement income security act of 1974, the family and medical leave act, the Utah antidiscrimination act, claims of harassment, discrimination and wrongful termination, and . . . I further understand that this agreement to arbitrate also applies to any disputes that the company may have with me.

(Direct Seller Agreement ¶ 20(a).)

Critical to any analysis of the arbitration clause at issue in this matter is the fact that the Direct Seller Agreement also contains a clause that renders the terms thereof unenforceable against Defendant if certain conditions were not met.  This clause reads:

>The terms and conditions of this Agreement as set forth herein shall not become effective or enforceable against the Company until the prior satisfaction of each of the following conditions … (vi) Direct Seller shall have authorized Company to perform a background investigation by executing the form(s) provided by the Company authorizing such investigation; and (vii) the Company shall have received a background check pursuant to <u>Section 9</u> in form and substance satisfactory to the Company.

(Direct Seller Agreement ¶ 2 (Condition Precedent).)

## II.     **Legal Standard**:[2]

Whether a district court considers a motion to compel arbitration under a Federal Rule of Civil Procedure 12(b)(6) standard or a summary judgment standard depends on whether the Complaint sets forth the basis for arbitration.  "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule12(b)(6) standard . . . .'"  *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (*quoting Somerset Consulting, LLC, v. United Capital Lenders*, LLC,

3

832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).  On the other hand, "a Rule 12(b)(6) standard is inappropriate when . . . 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate." *Id.* at 774. (*quoting Somerset*, 832 F. Supp. 2d at 482).  Under the latter circumstances, we "use the summary judgment standard under Rule 56(a), in which 'the motion [to compel] should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Maddy v. GE*, 629 F. App'x. 437, 440 (3d Cir. 2015) (*quoting Flinktkote Co. v. Aviva PLC*, 769 F.3d 215, 219 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 56(a).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The court applies the summary judgment standard because a motion to compel arbitration is "in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 528 (3rd Cir. 2009).  Under this standard, "the party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise." *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009).  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Vilches v. Travelers Cos.*, 413 F. App'x 487, 491 (3d Cir. 2011).

In this case, the Complaint does not reference to any arbitration agreement.  Rather, Defendant raises the existence of an arbitration agreement in its Motion to Dismiss and Compel Arbitration in which it attached a copy of the Direct Seller Agreement that contains the

4

arbitration clause. Both Defendant and Plaintiff also rely on factual evidence outside of the pleadings in arguing that arbitration is or is not appropriate. Therefore, this Court applies the summary judgment standard to resolve Defendant's Motion.[3]

### A. Legal Standard & The Federal Arbitration Act:

"[When a party resists arbitration under an existing arbitration clause[,] . . . the FAA allows a district court to compel . . . arbitration . . . ." *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136 (3d Cir. 1998) (*citing* 9 U.S.C. §§ 3,4; *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990)). Specifically, Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

Furthermore, the FAA provides that when the court refers a case to arbitration pursuant to the FAA, it "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the [parties' arbitration] agreement." *Id.* § 3.

When deciding a motion to compel arbitration, a court must ascertain whether "(1) a valid agreement to arbitrate exists, and (2) [whether] the particular dispute falls within the scope of that agreement." *Aetrex Worldwide, Inc. v. Sourcing for You Ltd.*, 555 F. App'x 153, 154 (3d Cir. 2014) (*quoting Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). Pursuant to the Federal Arbitration Act ("FAA"), "[a] written provision" in a commercial contract evidencing an intention to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract." 9 U.S.C. § 2. The Supreme Court has construed the FAA as establishing a nationwide policy favoring the resolution of disputes via arbitration that requires courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Arbitration agreements may only be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility, LLC, v. Concepcion*, 563 U.S. 333, 339 (2011).

### III.     Discussion:

The arbitration clause in the Direct Seller Agreement fails because Defendant was unable to establish that it reached a valid, binding contract to arbitrate claims with Plaintiff. Specifically, Defendant fails to establish that it offered Plaintiff valuable consideration in exchange for his offer to arbitrate claims. Defendant argues that adequate consideration for the arbitration agreement is evident in what it purports were mutual promises to submit claims to arbitration. Defendant also argues that consideration is present in the employment offer that Plaintiff received. (Mot. Dismiss Compel Arbitration, p. 9-10.) These arguments are without merit.

Arbitration is a matter of contract, and a party cannot be forced to arbitrate "unless that party has entered an agreement to do so." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1114 (3d Cir. 1993); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009). Thus, before compelling arbitration, a court must determine (1) "that a valid agreement to arbitrate exists between the parties." *Id.* "Because arbitration is a matter of contact," "[t]o determine whether the parties agreed to arbitrate, we turn to ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Under Pennsylvania law, a valid

contract requires: (1) a mutual manifestation of intention to be bound by the agreement; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

### A. **Vivint Solar Developer's Promise to Arbitrate is Illusory:**

Under Pennsylvania law, "[i]f the promise is entirely optional with the promisor, it is said to be illusory and, therefore, lacking consideration and unenforceable [because the] promisor has committed him/herself to nothing." *SCF Consulting, LLC v. Barrack, Rodos & Bacine*, 175 A.3d 273, 278 (Pa. 2017) (Dougherty, J., *concurring*) (*quoting Geisinger Clinic v. Di Cuccio,* 606 A.2d 509, 512 (Pa. Super. 1992)); *see also Maint. Specialties, Inc., v. Gottus*, 314 A.2d 279, 283 n.6 (Pa. 1974) (Jones, C.J., concurring) (finding a promise to be illusory where the company's obligation was voidable if, in the sole discretion of the company, an employee neglected or took action that was detrimental to the company's interests).

As a general matter, "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th 2002). Although the analysis is governed by state law, in evaluating arbitration provisions that permit the employer to modify its arbitration commitment, courts have reached consistent conclusions: generally, where an employer is "free to exercise or not exercise the arbitration clause at its whim," its "performance is entirely optional," and thus the arbitration agreement will be held to be illusory. *Druco Rest., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 783 (7th Cir. 2014). "[T]he fundamental concern driving this line of case law is the unfairness of a situation where two parties enter into an agreement that ostensibly binds them both, but where one party can escape its obligations under the agreement by modifying it." *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 209 (5th Cir. 2012); *see also Floss v. Ryan's*

*Family Steak Houses, Inc.,* 211 F.3d 306, 315-16 (6th Cir. 2000).

      Contrary to Defendant's argument, it did not exchange mutual promises to arbitrate claims with Plaintiff.  The conditions precedent clause in the Direct Seller Agreement rendered the terms thereof unenforceable against Defendant unless certain conditions were met.  (Direct Seller Agreement ¶ 2 (Condition Precedent).)  To reiterate, the relevant language of the conditions precedent clause reads as follows, "The terms and conditions of the Direct Seller Agreement] as set forth herein shall not become effective or enforceable against the Company until the prior satisfaction of each of the following conditions . . ."  (*Id.* ¶ 2.)  The conditions precedent clause clearly contemplates that Plaintiff would be employed by Defendant after receipt of a satisfactory background check.  (*Id.*)  This condition was not met in this instance.  (Compl. ¶   .)  Defendant's ability to disaffirm the Direct Seller Agreement and the arbitration clause, based on a condition that was not met in this instance, renders any promise to arbitrate claims illusory and lacking in consideration.

      Courts sitting in jurisdictions outside of Pennsylvania have enforced arbitration agreements contained in job applications even when the applicant – plaintiff was not ultimately hired.  *See McLean v. Byrider Sales of Ind. S, LLC,* No. 13-0524, 2013 U.S. Dist. LEXIS 126940 (S.D. Ohio 2013); *Collier v. Real Time Staffing Servs. Inc.*, No. 11-6209, 2012 U.S. Dist. LEXIS 50548 (N.D. Ill. 2012); *Johnson v. Circuit City Stores*, 148 F.3d 373 (4th Cir. 1998); and *Moore v. Hobby Lobby Stores, Inc.*, No. 10-0262, 2010 U.S. Dist. LEXIS 76964 (E.D. Ark. 2010).  However, in these cases, consideration was established based on binding, mutual promises to submit claims to arbitration.  (*Id.*)  As previously discussed, there is no promise to submit claims to arbitration that is binding on Defendant.  The conditions precedent clause renders any such agreement illusory.

**B.     The Conditional Offer of Employment Made by Vivint Solar Developer Does Not Establish Alternative Consideration**:

In Pennsylvania, it is a well settled legal principle that adequate consideration exists for an agreement attendant to an employment relationship where the agreement was entered into at the inception of the relationship, even where the employment is at-will.  *See Rullex Co., LLC v. Tel-Stream, Inc.*, 2020 Pa. LEXIS 3294 *15 (Pa. Supreme 2020) ("for a restrictive covenant executed after the first day of employment to be enforceable absent new consideration, the parties must have agreed to its essential provisions as of the beginning of the employment relationship."); *see also Modern Laundry & Dry Cleaning v. Farrer*, 536 A.2d 409, 411 (Pa. Super. 1988) (discussing consideration and restrictive covenants in employment agreements and stating, "as long as the restrictive covenant is an auxiliary part of the taking of employment and not a later attempt to impose additional restrictions on an unsuspecting employee, a contract of employment containing such a covenant is supported by valid consideration and is therefore enforceable."); *Barb-Lee Mobile Frame Co. v. Hoot*, 206 A.2d 59 (Pa. 1965) (stating that if a noncompetition clause is executed at the inception of the employment, the consideration to support the covenant may be the award of the position itself); *Morgan's Home Equipment Corp. v. Martucci*, 136 A.2d 838 (Pa. 1957) (holding covenant not to compete may be enforceable if contained in an employment agreement executed upon the taking of employment).

It is the opinion of this Court that the conditional offer of employment coupled with what can be characterized as unpaid, pre-employment job training is insufficient consideration to support the enforcement of the arbitration clause in this instance.  Critical, is the fact that Plaintiff was never hired to work as a sale consultant as contemplated in the Direct Seller Agreement.  Therefore, he never received employment in consideration for his agreement to

arbitrate claims. *See Enigwe v. U.S. Airway/U.S. Airways Express,* 438 F. App'x 80, 83 (3d Cir. 2011) (affirming dismissal of breach of contract claim, where employer was alleged to have terminated a conditional offer of employment to a job applicant who failed to pass a background check, because the employee was hired "contingent upon a favorable background investigation" and "without a favorable background check, he did not have an offer of employment"); *Steele v. Fannie Mae*, No. 13-1089, 2013 U.S. Dist. LEXIS 131612 (D.C. 2013) (motion to compel arbitration was denied where a conditional offer of employment was rescinded despite the fact that plaintiff began orientation and training activities because the court found that plaintiff was not an employee).

Since Defendant rescinded the conditional offer of employment, the parties did not enter into an employment relationship to establish that Plaintiff received consideration in exchange for his agreement to arbitrate claims.[4]  Defendant did not argue that consideration in this instance was supported by any form of financial compensation, and Plaintiff avers that no financial compensation was provided.

### IV.     Conclusion:

For these reasons, the Defendant's Motion to Dismiss and Compel Arbitration will be DENIED.


By the Court:

/s/ John Milton Younge
_____
Judge John M. Younge

---

[1] In briefing its Motion to Dismiss and Compel Arbitration, the Defendant submitted no evidence or argument to establish that it provided any form of financial consideration to Plaintiff in exchange for signing the arbitration agreement.

[2] In its Motion to Compel Arbitration, Defendant evaluated the issues it presented based on its application of Pennsylvania law. Plaintiff did not contest the application of Pennsylvania law. Therefore, this Court applies Pennsylvania law when analyzing this motion. *See Booth v. BMO Harris Bank, N.A.*, No. 13-5968, 2014 U.S. Dist. LEXIS 111053 (E.D. 2014) (parties must raise choice-of-law issue in arbitration enforceability context); *See Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014) (applying the forum state's law when "neither party presented a timely argument that the motion is governed by the law of any jurisdiction other than the forum state.")

[3] The Defendant did not request discovery regarding the validity of the arbitration clause in the Direct Seller Agreement, and discovery is not required to resolve the question of whether the parties entered into a valid contract. Discovery is only required where "facts [have been presented] sufficient to place the agreement to arbitrate in issue." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013). In the case *sub judice*, there is no genuine dispute of material fact surrounding the language of the arbitration agreement or rescinding of the conditional offer of employment.

[4] The determination of whether an individual is an employee can involve a very complex analysis which Defendant has not even attempted to establish in briefing its motion to dismiss and compel arbitration before this Court. For example, under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, courts have looked at the economic realities of the relationship. *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985); *see also Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (eschewing technical concepts in favor of economic realities as the test for employment). "It is a well-established principle that the determination of the employment relationship does not depend on isolated factors but rather upon the 'circumstances of the whole activity.'" *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3d Cir. 1991) (*quoting Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947). When addressing a case brought under the Fair Labor Standards Act, the Third Circuit Court of Appeals applied a six-factor test to determine if an individual met the definition of being an employee. *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985). Under this six-factor test, as applied, the factors are exclusive or dispositive in establishing whether an individual is defined as an employee. *Id*. In *Donovan*, the Court looked at: (1) the degree of the alleged employer's right to control the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (4) whether the service rendered requires a special skill; (5) the degree of permanence of the

working relationship; (6) whether the service rendered is an integral part of the alleged employer's business.  *Id*.

Courts examine the circumstances of the whole activity and whether as a matter of economic reality the individual depends upon the employer to whom they render service.  *Martin*, 949 F.2d at 1286, 1293; *see also Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 417-18 (3d Cir. 2012) (explaining the economic realities test as one depending upon the totality of the circumstances).  Noteworthy is the fact that Pennsylvania state courts use a test and analysis that is similar to that used by federal courts when evaluating whether an individual meets the definition of being an employee under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq., Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003); *see also Sherman v. American Eagle Express, Inc.*, 2012 U.S. Dist. LEXIS 30728 *34-35 (E.D. Pa. 2012) (Sanchez, J.) (explaining Pennsylvania courts' adoption of federal case law and tests under the FLSA for cases brought under the Pennsylvania Wage Payment and Collection Law).